# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA LINKER, ) | 1:05cv0810 DLB |
| ) | |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S |
| ) | SOCIAL SECURITY COMPLAINT |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## BACKGROUND

Plaintiff Barbara Linker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application for supplemental security income on March 20, 2002, alleging disability since March 5, 1986, due to discoid lupus. AR 77-92. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 18, 2005, the action was reassigned to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1  Law Judge ("ALJ").  AR 55-58, 60-63, 64.  On May 13, 2003, ALJ James Ross held a hearing.
2  AR 211-227.  On June 23, 2003, ALJ Ross found that Plaintiff was not disabled.  AR 44-51.  On
3  October 24, 2003, the Appeals Council vacated the decision and remanded the case to the ALJ.
4  52-54.

5       ALJ Ross held another hearing on October 26, 2004.  AR 228-254.  He issued a decision
6  denying benefits on November 14, 2004.  AR 10-17.  On April 29, 2005, the Appeals Council
7  denied Plaintiff's request for review.  AR 5-8.

8       <u>Hearing Testimony</u>

9       On October 26, 2004, ALJ Ross held a hearing in Fresno, California.  Plaintiff appeared
10 with her attorney, Robert Christenson.  Vocational expert ("VE") Thomas Dachelet also appeared
11 and testified.  AR 228.

12      Plaintiff testified that she believes her condition has gotten worse since the last hearing,
13 especially during the wintertime.  Arthritis has set into her fingers and ankles, making her
14 miserable.  Her lupus causes an itchy skin condition on her arms, legs, face, and chest.  AR 231.
15 She cannot go out into the sun in the summertime.  AR 233.

16      Plaintiff explained that her lupus causes constant fatigue and that she doesn't feel good
17 "half the time."  She has to take a nap everyday around 12:00 or 1:00 p.m., for two to four hours.
18 AR 234-235.  She testified that she cannot function without taking the nap.  AR 235.

19      When her arthritis acts up in the winter, she doesn't even try to lift things because it hurts
20 too much.  She can't grip tools and it is even hard for her to sign her name.  AR 235-236.
21 Although she never tried typing on a keyboard when she's having arthritis problems, she doesn't
22 see how she could do it.  AR 236.  She initially testified that she couldn't lift and carry any
23 weight, but then indicated that she could lift and carry up to 20-25 pounds, but not frequently.
24 AR 236.  She thought she could lift about 10 pounds frequently.

25      In addition to the arthritis, Plaintiff has muscle aches mainly in her knees and arms.  She
26 also cuts and bruises easily.  AR 237.  She is sick all the time and doesn't feel good.  AR 239.
27 Her thyroid is acting up and her medication has been modified.  AR 240.  She is gaining weight
28 from her thyroid medication.  AR 240.

Plaintiff told the ALJ that she was diagnosed with discoid lupus in 1986 and hasn't worked anywhere in the past 15 years because she was raising her children. She has guardianship of her two grandchildren, ages 4 and 6. She also lives with her 16 year old daughter. AR 242. Plaintiff attends Porterville Junior College part-time, taking two classes and attending school for an hour and a half (9:30 a.m. to 11:00 a.m.), four days a week. AR 243. She picks up her grandson from daycare, and they go home, eat lunch and go to bed. AR 245. Her daughter takes care of the children once she gets home from school. AR 246. While her daughter takes care of them, Plaintiff stays in bed and sleeps. AR 246.

Plaintiff uses the City bus to get around, but admitted that she drove to the hearing using her son's car. AR 246-247. She indicated that she wanted to get a Human Services certificate, but that it would probably take her longer than the usual 18 months. Plaintiff told the ALJ that she was hoping to go to work, but that it would be a couple of years down the road. AR 247.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience, who had no exertional limitations. This person could have limited, if no, exposure to the sun, and would therefore have to work indoors. This person could have very little interaction with the public. AR 248. The VE testified that such an individual could perform all sedentary and light positions, reduced by 35 percent. AR 249-250.

For the second hypothetical, the ALJ asked the VE to assume an individual unrestricted in sitting, standing and walking, but who could not lift more than 15 to 20 pounds. This person could lift five pounds frequently, and could not type or work on a keyboard, use small tools or perform fine manipulation with her hands. This person could not perform any work. AR 250-251.

Plaintiff's attorney asked the VE to assume a person that needed unscheduled breaks, and needed to sleep during the day between two to four hours. This person could not perform any work. AR 253.

Medical Record

On May 29, 2002, Plaintiff was seen by Harpreet S. Sandhu, M.D., for a consultive examination. AR 164. Plaintiff explained that she has had discoid lupus for the past 16 years, and complained that she was tired all the time and easily fatigued. She also complained of nonspecific aching all over her body. Upon examination, Dr. Sandhu noted "discoid patches of skin atrophy with definite scaling and slight erythematous marginal circular lesions varying in size anywhere from 0.5 cm to 3.0 cm all over the upper extremities, some lesions confluent to form larger patches over the arms, the face, and the front of the upper chest." AR 165. She had normal range of motion in all joints, no swelling, and normal gait. Her bilateral grip was normal, as was fine finger movements and use of fingers in subtle function. AR 165. She was able to sit, stand, walk, move, lift, carry, handle objects, hear and speak quite normally. She had a tendency towards slight itching occasionally over the lesions. AR 165.

Dr. Sandhu diagnosed discoid lupus, fairly stable, with moderately extensive involvement over the upper extremities, the front of the upper chest, and face; hypertension, stable on treatment; hypothyroidism, stable on treatment; and a generalized feeling of muscle aches and being easily fatigued. He opined that Plaintiff was partially disabled to some extent in her ability to be exposed to the sun. Her treatment provides fair management. Plaintiff did not have any limitations in moving, sitting, standing, walking, handling objections, hearing or speaking, and should therefore be able to carry out a regular job profile. Symptoms of being easily fatigued, tiredness and muscle aches were subjective in nature and needed to be evaluated more in the work place setting. He concluded, "It would definitely be difficult for the patient regarding her work place relationships considering her skin condition, which is overly evident and hence may be a hindrance to her seeking employment from that perspective." AR 166.

On June 2, 2002, State Agency physician Alfred Torre, M.D, completed a Physical Residual Functional Capacity assessment. Dr. Torre opined that Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations. She had to avoid even moderate exposure to extreme heat. AR 171-178. This finding was affirmed by State Agency physician Durell Sharbaugh, M.D., on September 5, 2002. AR 178.

On February 25, 2003, Plaintiff saw Charles Boniske, M.D., at the Rheumatology Clinic at Hillman Heath Care Center. He indicated that Plaintiff's skin rash was stable on a small dose of prednisone and 200 mg of Plaquenil. Although she had a moderate rash on her neck, the rash on her arms seemed better. She indicated that she was frustrated because Social Security is telling her she is no longer disabled.[3] AR 184. On examination, she had a persistent macular rash, particularly on her chest, and a hypopigmented rash on the arms. There was no synovitis in any of her peripheral joints. Dr. Boniske indicated that Plaintiff was doing well on her current regimen. AR 184.

Plaintiff returned to Dr. Boniske on August 26, 2003. Her rash was fairly stable, although she complained of a little more itching. Plaintiff was taking care of a two-year-old and a four-year-old, and that this was causing her marked fatigue. She was given a prescription cream and told to see her treating physician as soon as possible to follow-up on a slow heartbeat. AR 186.

Plaintiff saw Chi Nguyen, M.D., on August 27, 2003. He indicated that Plaintiff was doing well. He assessed hypertension, stable; bradycardia, and lupus. He advised her to continue on all current medications and ordered testing. AR 187.

On March 4, 2004, Plaintiff was seen for a follow-up on her hypothyroidism, which was poorly controlled with her current dose of medication. Her dosage was increased. AR 204.

On April 26, 2004, Plaintiff saw Vinay K. Buttan, M.D., for a consultive examination. Her chief complaint was lack of energy. AR 196. She also complained of pain in her elbows, hands, knees and hips. Examination of her skin revealed a discoid hypopigmented rash on her arms, chest and neck. There were no neurological defects. Her gait and grip strength were normal, although Plaintiff complained of slight pain in the hands on making a fist. She had slight tenderness in the cervical spine, elbows, wrists, hands and knees. He diagnosed hypertension, well controlled, hypothyroidism, which may improve after adjusting her medication, and discoid lupus erythematosus. Her lupus seemed to be stable with medications, although she had to avoid direct sunlight. She had some problems in her joints, which were controlled by medication. Dr.

---

[3] Plaintiff was found disabled in March 1992. However, she was incarcerated for four years and her benefits were stopped. She filed the instant application upon her release.

5

1 Buttan opined that Plaintiff had no restrictions in sitting, standing, and walking.  He further
2 stated that she "may not" be able to lift heavy weight of more than 15-20 pounds because of the
3 pain in her joints.  He stated that she "may not" be able to do typing work, work on a keyboard,
4 use small tools or do manipulation because of the arthritis in the joints of her hand.  AR 196-197.

Plaintiff returned to Dr. Boniske on July 27, 2004.  He indicated that Plaintiff's medications were "doing a good job on her rash" and the ibuprofen "seems to work fairly well" for her arthralgias.  She complained of frequent locking and buckling of her left knee, although an x-ray did not show any abnormalities.  AR 199.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairment of discoid lupus, for which she has received conservative treatment with medications.  He determined that Plaintiff was only partially credible, and discounted Plaintiff's testimony of physical limitations.  AR 14-15.  He determined that Plaintiff had no exertional limitations, but had to avoid any exposure to direct sunlight and should have limited interaction with the public.  AR 16.  Based on the testimony of the VE and the application of the Medical-Vocational Guidelines, the ALJ determined that Plaintiff could perform a significant range of work at all exertional levels.  AR 17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

6

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (discoid lupus) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform significant range of work at all exertional levels. AR 16-17.

Plaintiff argues that the ALJ erred in failing to (1) adopt the opinion of Dr. Sandhu; (2) adopt the opinion of Dr. Buttan and the VE testimony based on his limitations; (3) recontact Dr.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

Buttan to obtain clarification of his opinion; (4) adopt the opinion of the VE as to the facts of the case; (5) find that Plaintiff's fatigue precluded work; and (6) find Plaintiff credible.

**DISCUSSION**

A.     Dr. Sandhu's Opinion

Plaintiff contends that the ALJ erred in failing to adopt Dr. Sandhu's opinion that Plaintiff would have difficulty with workplace relationships, and that this may be a hindrance to her seeking employment. AR 166. She contends that the reasons set forth by the ALJ are not adequate or persuasive.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

Here, the ALJ reviewed Dr. Sandhu's findings, including his opinion that Plaintiff didn't have any physical limitations, but may have difficulty in her workplace relationships because of the lesions on her skin. While the ALJ adopted Dr. Sandhu's finding that Plaintiff had no exertional limitations, he rejected his opinion that Plaintiff would have difficulty in workplace relationships and that this might be a hindrance to her seeking employment. AR 15. *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989) (the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions).

Prior to analyzing the ALJ's reasons for rejecting this portion of Dr. Sandhu's opinion, it is worth nothing the unclear assumptions upon which his opinion is based. When Dr. Sandhu examined Plaintiff, her skin condition appeared quite obvious. He noted "lesions varying in size anywhere from 0.5 cm to 3.0 cm all over the upper extremities, some lesions confluent to form larger patches over the arms, the face, and the front of the upper chest." AR 165. Based on his

observations, he opined that Plaintiff would have difficulty in her workplace relationships, implying that no one would want to work in proximity to Plaintiff. This is, however, quite an assumption. It is certainly difficult to predict human behavior, but to assume the worst is neither productive nor supportive of the notion of acceptance. In other words, although Plaintiff may have a skin condition, it is an unsupportive logistical leap to assume that coworkers would shun her unequivocally.

In any event, even assuming that Dr. Sandhu's opinion can be translated into a supported limitation, the ALJ set forth two appropriate reasons for rejecting this opinion. He first explained that based on his observations, Plaintiff's skin condition "appeared to be a mild rash and not 'lesions.'" AR 15. While Plaintiff characterizes this as the ALJ playing doctor and faults him for not performing a "close inspection" of the skin on her upper extremities and chest, the ALJ likely made this observation to demonstrate that Plaintiff's skin condition waxes and wanes, and that it was not as severe as when Dr. Sandhu examined her almost two and one half years prior. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence); *see eg., Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (although the Ninth Circuit has disapproved of so-called "sit and squirm" jurisprudence, the inclusion of the ALJ's personal observations does not render the decision improper). The medical evidence subsequent to Dr. Sandhu's examination demonstrates that although Plaintiff continued to have some form of a rash, she was doing well on her medications. AR 184, 186, 187, 196-197. In fact, the most current medical record, dated three months before the hearing, indicates that Plaintiff's medications were "doing a good job on her rash." AR 199.

The ALJ also discredited Dr. Sandhu's opinion based on the fact that Plaintiff is able to attend school. AR 15. Plaintiff testified that she attends Porterville Junior College part-time, taking two classes and attending school for an hour and a half (9:30 a.m. to 11:00 a.m.), four days a week. AR 243. She has been attending college part-time since Fall 2003. AT 243-245. It was reasonable for the ALJ to infer that since Plaintiff is able to attend school, which obviously involves going out in public despite her skin condition, she could perform work in a public workplace. Plaintiff's overall testimony supports this position, as well. She did not testify that

she avoided public places or that she worried about how she was perceived. In fact, Plaintiff testified that she hoped to find work after she completes her Human Services certificate. AR 246.

In so far as Plaintiff points to the accepted limitation that Plaintiff should have limited interaction with the public in support of Dr. Sandhu's opinion, her argument fails. Plaintiff's limitation regarding public interaction was likely a recognition of the business/profit aspect of the workplace and the ramifications of the public's possible perception, whether or not such perceptions would actually occur or would be justified. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ⋯ and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

B.   <u>Dr. Buttan's Opinion</u>

Next, Plaintiff argues that the ALJ did not properly reject Dr. Buttan's opinion that Plaintiff "may not" be able to lift heavy weight of more than 15-20, and that she "may not" be able to do typing work, work on a keyboard, use small tools or do manipulation. AR 196-197. Plaintiff contends that the "may not" language precludes the activity described.

The ALJ rejected Dr. Buttan's limitations regarding Plaintiff's weight limitation and manipulative limitations because he found the "may not" language to be a "hypothetical condition," and explained that he could not base a decision on such language. AR 15. It is the ALJ's duty to resolve conflicts and ambiguity in the medical record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Given the totality of the medical evidence, which indicates that Plaintiff had no manipulative limitations, AR 165, 171-178, and that ibuprofen "seems to work fairly well" for her arthralgias," the ALJ was entitled to resolve the conflict and ambiguity in favor of finding no manipulative limitations. AY 199. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational interpretation. *Magallanes,* 881 F.2d at 750.

As the Court found that the ALJ did not err in rejecting Dr. Buttan's limitations, the ALJ did not err in rejecting the VE testimony relating to those limitations.

C. Failure to Recontact Dr. Buttan

Plaintiff contends that the ALJ should have recontacted Dr. Buttan to resolve the ambiguity in his opinion and obtain clarification.

In support of her argument, Plaintiff relies on 20 C.F.R. § 416.912(e)(1) and 20 C.F.R. § 416.927(c)(3), both of which allow the ALJ to recontact medical sources. Each section applies, however, only where the ALJ has first determined that the evidence is inadequate to make a disability determination. Similarly, case law provides that the ALJ has a duty to develop the record only where the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).

Plaintiff has not demonstrated, nor does the record show, that the evidence was somehow deficient to allow the ALJ to make a proper disability determination. Instead, as discussed above, the overall medical evidence indicates that Plaintiff had no manipulative limitations, AR 165, 171-178, and that ibuprofen "seems to work fairly well" for her arthralgias." AR 199. While the medical record contained conflicting reports, the ALJ was entitled to resolve these conflicts and was not necessarily required to recontact any medical sources. So, although he discounted Dr. Buttan's limitations as "hypothetical," he did not determine that the evidence was insufficient. He therefore had no duty to contact Dr. Buttan. *See also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (duty to develop record not triggered where ALJ did not find that the record was inadequate to adjudicate disability).

D. VE Testimony

Next, Plaintiff argues that the ALJ erred in failing to adopt the testimony of the VE as to the facts that best fit the case. According to Plaintiff, the ALJ should have adopted the hypothetical posed to the VE that included the limitations of Dr. Buttan. The VE testified that someone with these limitations could not perform work.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

11

The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). Therefore, the VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the ALJ adopted the hypothetical question that set out the limitations for which he found support in the record. For the reasons discussed above, the ALJ properly discredited Dr. Buttan's limitations, and was therefore not required to accept the VE's testimony as to the hypothetical containing those limitations.

Plaintiff's counsel also posed a hypothetical to the VE, which included the additional limitation of needing unscheduled breaks, and needing to sleep during the day between two to four hours. The VE testified that this person could not perform any work. Insofar as Plaintiff contends that the ALJ should have adopted the VE's conclusion as to this hypothetical, her argument fails. While Plaintiff's subjective complaints of fatigue are evident throughout the record, and she testified to needing her daily naps, the ALJ properly discredited her testimony, as explained below. Accordingly, the ALJ was not required to accept a hypothetical containing these limitations.

E.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in finding that she was not credible. In a related argument, she contends that the ALJ erred in failing to find that her fatigue precludes work activity.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

The ALJ reviewed Plaintiff's testimony, including her statements that she is always tired and naps everyday for two to four hours. AR 14. The ALJ also reviewed Plaintiff's testimony as to her physical limitations, i.e., that she could not lift anything when it was cold, but that she can normally lift 20-25 pounds. AR 14. In analyzing her testimony, the ALJ believed Plaintiff insofar as she testified that she had a skin condition that requires her to limit her exposure to the sun. AR 15. However, he determined that despite Plaintiff's testimony to the contrary, her condition was not limiting in any other way. AR 15.

The ALJ therefore dismissed Plaintiff's complaints of fatigue, her need for naps, and her lifting limitations. Elsewhere in the opinion, the ALJ noted that Plaintiff has a long history of conservative treatment of discoid lupus with medications, and that clinic notes continuously show that she was improving and stable. AR 14, 184, 186, 187, 196-197, 199. Plaintiff was also told to continue exercising and avoid exposure to the sun. AR 14. Conservative, effective treatment is a valid reason for discrediting subjective complaints. *Bunnell v. Sullivan*, 247 F.2d 341, 345-346 (9th Cir. 1991).

The ALJ also noted that contrary to Plaintiff's testimony, the weight of the medical evidence did not reveal any significant exertional limitations. AR 15. For example, Dr. Sandhu found that Plaintiff did not have any physical limitations. AR 166. Dr. Buttan observed no deformity of any joint, no muscular atrophy and normal grip strength. AR 197. Similarly, the State Agency physicians found that Plaintiff had no exertional limitations. AR 171-178. As Respondent points out, while the severity of the pain and other symptoms cannot be discredited

13

*solely* by a lack of objective medical evidence, weak objective support undermines a claimant's subjective complaints. *Bunnell*, 947 F.2d at 345; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The ALJ also described Plaintiff's daily activities. Plaintiff watches, and has guardianship of, her four-year-old and six-year-old grandchildren. AR 242. She attends college classes four days a week, for one and a half hours per day. AR 243. Although Plaintiff testified that she took the bus and did not drive, she admitted that she drove to the hearing. AR 14. The ALJ was permitted to examine Plaintiff's daily activities in assessing her subjective complaints. *Thomas,* 278 F.3d at 958.

Plaintiff points to her specific testimony and the instances of support in the record, but the ALJ's analysis remains proper. In this medical record, as with a great majority of medical records in Social Security cases, there was support, for Plaintiff's position, as well as for that of the Commissioner. However, if the ALJ's credibility finding is supported by substantial evidence, as it is here, the Court may not engage in second-guessing. *Id.*

Insofar as Plaintiff faults the ALJ for failing to find that Plaintiff's fatigue precludes work activity, her argument fails. She contends that the ALJ improperly rejected her complaints of fatigue and muscle aches, but, as explained above, the ALJ's finding regarding Plaintiff's credibility was supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Barbara Linker.

IT IS SO ORDERED.

Dated:    July 3, 2006                     /s/ Dennis L. Beck
3b142a                                     UNITED STATES MAGISTRATE JUDGE